UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
ILHAME AZZIZ,                 )
          Plaintiff,          )
                              )
v.                            )    Civil Docket No. 05-10751-NMG
                              )
MICHAEL CHERTOFF, as          )
Secretary of the Department   )
of Homeland Security, et al., )
          Defendants.         )
                              )
```

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

The defendants in the above-captioned matter respectfully request that this Court grant summary judgment in favor of the defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**STATEMENT OF MATERIAL FACTS OF RECORD**

Ilhame Azziz (hereinafter the "plaintiff") is a thirty-four year old native of Morocco. See Exhibit 3, p. 4.[1] In June of 1993, the plaintiff attended travel agent classes in Quebec, Canada. Id. In December of 1993, the plaintiff obtained a visitor's visa to visit her brother in St. Petersburg, Florida.

---

[1] The exhibits are organized chronologically as to date of filing or issuance: **Exhibit 1** - Plaintiff's N-400 Application for Naturalization (signed by the plaintiff, "under penalty of perjury," on February 2, 2000 and then resigned by the plaintiff after her interview on January 22, 2001); **Exhibit 2** - Decision on Application of Naturalization dated October 10, 2002; **Exhibit** 3 - Plaintiff's Response to Denial of Application for Naturalization with Attachments (this exhibit contains handwritten numbers, inserted by counsel for the defendants, for the convenience of the Court; and, **Exhibit 4** - Decision on Naturalization Hearing dated December 15, 2004.

Id. at 4-5.  On January 9, 1994, the plaintiff returned to Canada
to complete her studies.  Id. at 5.  On May 25, 1994, the
plaintiff returned to Florida.  Id.  On August 4, 1994, the
plaintiff married her brother's friend, Chris Gustafson.  Id.  On
January 25, 1995, the plaintiff was granted conditional permanent
resident status as the spouse of a United States Citizen.  See
Exhibit 4.

In February 1995, the plaintiff and her husband planned a
two-month trip to Morocco to visit her family.[2]  Exhibit 3, p. 5.
Her husband, however, did not make the trip with her and she
returned two weeks later.  Id.  When the plaintiff returned home,
her husband had left her.  Id.

Shortly thereafter, the plaintiff engaged in sexual
relations with Abdelkouddous Chakir[3], a Moroccan friend of her
brother.  Id.  On December 14, 1995, the plaintiff gave birth to
Waleed Chakir, the biological son of Abdelkouddous Chakir.  Id.
and p. 18.  After Waleed was born, the plaintiff stayed in a
relationship with Abdelkouddous Chakir.  Id.

---

[2] On the first page of Exhibit 1, Part 3, the plaintiff was
asked to list the dates that she was absent from the United
States since becoming a permanent resident.  The plaintiff listed
April 19, 1995 through May 18, 1995 and June 21, 1995 through
July 4, 1995, in Morocco, visiting family.  These dates do not
conform with the dates that she claimed to have gone to Morocco
in her affidavit which appears to be some time in February of
1995.

[3] Abdelkouddous Chakir was in the United States illegally.
See Exhibit 4.

On November 6, 1996, the plaintiff and her estranged husband, Chris Gustafson, filed a Joint Petition to Remove the Conditional Basis of Alien's Permanent Resident Status, Form I-751.  See Exhibit 4.  The petition listed both the plaintiff and Gustafson as living at 1824 Shore Drive, S#117 South Pasadena, Florida.  Id.[4]  In addition, on the petition, the plaintiff claimed that neither Gustafson nor herself had any children. Id.[5]  At the time of filing, the plaintiff was pregnant with her second child whose biological father was Abdelkouddous Chakir. Id.

On November 27, 1996, the plaintiff's Joint Petition to Remove the Conditional Basis of Alien's Permanent Resident Status was approved.  Exhibit 3, p. 5.

On January 2, 1997, the plaintiff gave birth to Reda Chakir, two months after the filing of the petition.  Id. and p. 18.  The child's biological father was Abdelkouddous Chakir, not Gustafson.  Id.

On January 30, 1998, the plaintiff gave birth to a third child whose biological father was Abdelkouddous Chakir.  Id. and

---

[4] This was contrary to Gustafson's affidavit which stated that he was living and taking classes in Phoenix.  See Exhibit 3, p. 33.  It was also contrary to the plaintiff's affidavit which stated that, since their separation in 1995, Gustafson did not return to Florida until December 1996.  Id. at 5.

[5] This was contrary to the fact that the plaintiff had given birth to Waleed Chakir on December 14, 1995, the biological son of Abdelkouddous Chakir.

p. 19.

On March 25, 1999, the plaintiff and Gustafson were legally divorced.  Id. at 6 and 11-16.

On February 9, 2000, the plaintiff gave birth to Anis Chakir.  Exhibit 4.[6]

On February 28, 2000, the plaintiff filed an Application for Naturalization (Form N-400) with the Tampa District Office. Exhibit 1.[7]

On January 22, 2001, the plaintiff was interviewed under oath in the Tampa District Office in reference to her application for naturalization.  Exhibit 4.[8]

On October 10, 2002, the plaintiff's application for naturalization was denied.  Exhibit 2.

On October 11, 2002, the plaintiff filed a request for hearing on the denial of her application for naturalization. Exhibit 3.  Included with this submission, among other exhibits, was an affidavit signed by the plaintiff and dated November 11,

---

[6] The plaintiff did not mention her fourth child until the date of her hearing for naturalization on November 5, 2003. Exhibit 4.

[7] The plaintiff failed to mention her fourth child in her original Application for Naturalization which she signed on "under penalty of perjury," on February 2, 2000.  See Exhibit 1, Part 6.

[8] During this interview, the plaintiff testified that she only had three children.  Id.

4

2002.  <u>Id.</u> at 4-6.[9]

On November 5, 2003, the plaintiff testified at a hearing on the denial of her application for naturalization.  Exhibit 4.[10]

On December 15, 2004, the District Director for Citizenship and Immigration Services issued a decision denying the plaintiff's application for naturalization.

On April 14, 2005, the plaintiff filed a complaint to review the denial of her application for naturalization with the District Court.  Docket Entry 1.

On June 21, 2005, the plaintiff filed a new application for naturalization with the United States Immigration and Naturalization Service.  This application is currently pending.[11]

---

[9] The plaintiff failed to mention her fourth child in her affidavit dated November 11, 2002.

[10] As previously mentioned, it was at this hearing that the plaintiff first mentioned her fourth child with Abdelkouddous Chakir who, apparently, was living in Morocco with the plaintiff's mother.  Exhibit 4.  This fourth child was born nineteen days before the plaintiff filed her application for naturalization in which she failed to mention said child.

[11] In determining whether an applicant for naturalization is a person of good moral conduct, the Bureau of Citizenship and Immigration Service of the Department of Homeland Security has a five year look-back period.  <u>See</u> 8 U.S.C. § 1427(a).  The last instance in which the plaintiff was untruthful under oath was in her affidavit that she signed on October 11, 2002.  Exhibit 3, pp. 4-6.  Consequently, the plaintiff must wait until at least October 11, 2007, to submit a new application for naturalization that will not be denied because of her prior failure to tell the truth while under oath.  This new application for naturalization was filed prior to the completion of the five year look-back period.

**ARGUMENT**

**I. Standard of Review**

An applicant seeking to become a naturalized citizen may appeal the denial of his application by the Bureau of Citizenship and Immigration Service of the Department of Homeland Security ("CIS") to the district court for the district in which he resides.  8 U.S.C. § 1421(C); 8 C.F.R. § 310.5(b).  Section 1421(c) of Title 8 provides for the de novo review of the denial of plaintiff's application for naturalization:

> A person whose application for naturalization under this title is denied after a hearing before an immigration officer . . . may seek review of such denial before the United States district court for the district in which such person resides . . .. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

According the District Court for the District of Massachusetts has jurisdiction to hear the plaintiff's complaint for review of the denial of her application for naturalization.

**II. The plaintiff's provision of false testimony under oath, before an immigration officer, during her application process for naturalization, demonstrates that she was not a person of good moral character and, therefore, should be denied naturalization.**

To be eligible for naturalization, an applicant must be a person of good moral character.  8 U.S.C. § 1427(a)(1)(3); 8 U.S.C § 1101(f)(6).  The applicant bears the burden of

demonstrating that during the statutorily prescribed period (five years immediately following filing of application[12]) he or she has been and continues to be a person of good moral character.  8 C.F.R. § 310.10(a).  "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was -- (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter."  8 U.S.C. § 1101(f)(6).  An applicant shall be found to lack good moral character if, during the statutory period, the applicant -

> Has given false testimony to obtain any immigration benefit from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit; this prohibition applies regardless of whether the information provided in the false testimony was material, in the sense that if given truthfully it would have rendered ineligible for benefits either the applicant or the person on whose behalf the applicant sought the benefit.

8 C.F.R. § 316.10(b)(2)(vi)(emphasis added).

Any testimony given under oath which is false can be used to show lack of good moral character, no matter how trivial or how consequential.  See Kungys v. United States, 483 U.S. 759, 780 (1988).  In Kungys, the petitioner was found to be lacking good moral character for providing false testimony as to his date and place of birth on both his visa and naturalization applications.  Id. at 782.  In reaching this decision, the Court stated that 8

---

[12] See 8 U.S.C. § 1427(a).

U.S.C. § 1101(f)(6) "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies . . ." Id. at 779-780.

In a similar decision, Opere v. United States Immigration and Naturalization Service, 267 F.3d. 10 (1st Cir., 2001), the plaintiff filed for a "green card" based on his marriage to United States citizen. Id. at 12. The petition stated the plaintiff and his wife were residing together at 53 Pine Street. Id. The plaintiff and his wife both affirmed their living arrangements under oath to the Immigration Officer. Id. The plaintiff's wife later recanted, testifying that she and the plaintiff had separated two months prior to the interview and she was living with her sister. The Court of Appeals upheld the Immigration Board's determination that plaintiff was statutorily ineligible from establishing good moral character for providing false testimony. Id. at 14.

In the case at hand, the plaintiff completed an application for naturalization under the pains of perjury, submitted an affidavit in support of the application for naturalization, and was interviewed under oath regarding her application for naturalization; in each case, she failed to admit that she had a fourth child with Abdelkouddous Chakir, an illegal immigrant from Morocco who was also the biological father of the plaintiff's other three children, all of whom were conceived while the

8

plaintiff was "married" to Chris Gustafson through whom the plaintiff gained her permanent resident status.  This failure of the plaintiff to tell the truth was not an isolated incident, rather, it was consistent with a pattern of deception initiated by the plaintiff throughout her citizenship process.  The plaintiff's failure to tell the truth regarding the existence of her fourth child with Abdelkouddous Chakir on three separate occasions under oath is clear evidence that the plaintiff is not a person of good moral character under the law.

Consequently, the defendants' denial of the plaintiff's application was proper.

**CONCLUSION**

The plaintiff's failure to tell the truth under oath on three separate occasions is clear evidence that the plaintiff is not a person of good moral conduct.  According, the decision of the CIS should be affirmed and naturalization should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorney,

MICHAEL J. SULLIVAN
United States Attorney


Dated: April 19, 2007    By:    /S/ Christopher R. Donato
Christopher R. Donato
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3303

**CERTIFICATE OF SERVICE**

I hereby certify that the above-document was filed through the ECF system electronically to any registered participants and a paper copy was sent by mail to those indicated as non-registered participants.

Dated: April 19, 2007    /S/ Christopher R. Donato
Christopher R. Donato
Assistant U.S. Attorney

# Exhibit 1

**Plaintiff's N-400 Application for Naturalization**

**U.S. Department of Justice**
Immigration and Naturalization Service

OMB #1115-0009
**Application for Naturalization**

## START HERE - Please Type or Print

### Part 1. Information about you.

| | | |
|---|---|---|
| Family Name AZZIZ | Given Name ILHAME | Middle Initial |

U.S. Mailing Address - Care of IBIS

Street Number and Name  917 41st St.

Apt. # N/A

City ST PETERSBURG

County PINELLAS

State FLORIDA

ZIP Code 33712

Date of Birth (month/day/year) 03-02-73

Country of Birth MOROCCO

Social Security #

A #

### Part 2. Basis for Eligibility (check one).

a. ☒ I have been a permanent resident for at least five (5) years.

b. ☐ I have been a permanent resident for at least three (3) years and have been married to a United States Citizen for those three years.

c. ☐ I am a permanent resident child of United States citizen parent(s).

d. ☐ I am applying on the basis of qualifying military service in the Armed Forces of the U.S. and have attached completed Forms N-426 and G-325B.

e. ☐ Other. (Please specify section of law)

### Part 3. Additional information about you.

Date you became a permanent resident (month/day/year) 01-25-95

Port admitted with an Immigrant visa or INS Office where granted adjustment of status. TAMPA  FLORIDA IR-6.

Citizenship  MOROCCAN

Name on alien registration card (if different than in Part 1)  N/A  same

Other names used since you became a permanent resident (including maiden name)  N/A  Gustafson

Sex ☐ Male ☒ Female

Height 5-04

Marital Status: ☐ Single ☐ Married ☒ Divorced ☐ Widowed

Can you speak, read and write English? ☐ No ☒ Yes

**Absences from the U.S.**

Have you been absent from the U.S. since becoming a permanent resident? ☐ No ☒ Yes.

If you answered "Yes", complete the following. Begin with your most recent absence. If you need more room to explain the reason for an absence or to list more trips, continue on separate paper.

| Date left U.S. | Date returned | Did absence last 6 months or more? | Destination | Reason for trip |
|---|---|---|---|---|
| 08-24-99 | 01-27-00 | ☐ Yes ☒ No | MOROCCO | VISITING FAMILY |
| 06-21-95 | 07-04-95 | ☐ Yes ☒ No | MOROCCO | VISITING |
| 04-19-95 | 05-18-95 | ☐ Yes ☒ No | MOROCCO | VISITING |
| 5/00 | 6/00 | ☐ Yes ☒ No | MOROCCO | VISITING |
| 04-03 | 04-2003 | ☐ Yes ☒ No | Morocco | FAMILY |
| 12-02 | 12-03 | ☐ Yes ☐ No | Morocco | Wedding |

### FOR INS USE ONLY

Returned

Resubmitted

Reloc Sent

Reloc Rec'd

☒ Applicant Interviewed  1/22/01

At interview

☐ request naturalization ceremony at court

Remarks

Action

To Be Completed by Attorney or Representative, if any
☐ Fill in box if G-28 is attached to represent the applicant

VOLAG#

ATTY State License #

FEB 1 3 2001

SSC*000217450
278000
8SC000210803

Form N-400 (Rev. 07/17/91)N   Continued on back

Nov-14-05   10:49am   From-CHIEF COUNSEL BOSTON   671 565 4921   T-078   P.003   F-137

*current address*   07-02 preser.
539 Washington St Quincy   07-01 - 07-

## Part 4. Information about your residences and employment.

**A.** List your addresses during the last five (5) years or since you became a permanent resident, whichever is less. Begin with your current address. If you need more space, continue on separate paper.

91 Channing St Cambridge   9-00 - 12-00

53 McAlister Dr Braintree MA 02184 #10   12-00 - 06-01

Street Number and Name, City, State, Country, and Zip Code

| Street Number and Name, City, State, Country, and Zip Code | | From | To |
|---|---|---|---|
| ST PETE Beach   St pete FL 33705 | ③ | 08/94 | 01/95 |
| 642  31st street s   st pete FL 33712 | | 01/95 | 01/96 |
| 1186 shore DR S   st pete FL 33711 | | 01/96 | 05/98 |
| 2281 32 th way s   st pete FL 33711 | | 05/98 | 03/99 |
| 5261 4th lane   st petes FL 33712 | | 03/99 | 08-31-99 |

**B.** List your employers during the last five (5) years. List your present or most recent employer first. If none, write "None". If you need more space, continue on separate paper.

| Employer's Name | Employer's Address Street Name and Number - City, State and ZIP Code | Dates Employed (month/day/year) From | To | Occupation/position |
|---|---|---|---|---|
| CARLSON WAGONLIT TRAVEL | 5265 34th STREET S st pete FL337 | 09/95 | 06/99 | TRAVEL Consultant |
| | | ⑦ | | Unemployed |
| | | | | since 7/02 |

## Part 5. Information about your marital history.

Goes to school doing MBA - Const. Company *(further down)*

**A.** Total number of times you have been married ___1___ If you are now married, complete the following regarding your husband or wife.

| Family name | | Given name | Middle initial |
|---|---|---|---|
| Chakir   NONE | | Abdelkouddous   NONE | NONE |

| Address | |
|---|---|
| NONE | 69 Ave de la participation Roche Noire |

| Date of birth (month/day/year) | Country of birth | Citizenship |
|---|---|---|
| 3-6-71   NONE | Morocco   NONE | Morocco   NONE |

| Social Security# | A# (if applicable) | Immigration status (if not a U.S. citizen) |
|---|---|---|
| NONE | NONE | NONE |

| Naturalization (if applicable) (month/day/year) | Place   (City, State) |
|---|---|
| | NONE |

If you have ever previously been married or if your current spouse has been previously married, please provide the following on separate paper: Name of prior spouse, date of marriage, date marriage ended, how marriage ended and immigration status of prior spouse.

## Part 6. Information about your children.

**3.** Total Number of Children ___3__4___ Complete the following information for each of your children. If the child lives with you, state "with me" in the address column; otherwise give city/state/country of child's current residence. If deceased, write "deceased" in the address column. If you need more space, continue on separate paper.

| Full name of child | Date of birth | Country of birth | Citizenship | A - Number | Address |
|---|---|---|---|---|---|
| WALEED CHAKIR | 12.14.95 | USA | AMERICAN | N/A | with ME |
| BED A CHAKIR | 01.08.97 | USA | AMERICAN | N/A | with ME |
| SORAYA CHAKIR | 01.31.98 | USA | AMERICAN | N/A | WITH ME |
| Anis Chakir | 29-00 | USA | USA | N/A | in Morocco with mother |
| | | | *none are in anywhere in the world* | | |

*Continued on back*

---

## Part 7. Additional eligibility factors.

Please answer each of the following questions. If your answer is "Yes", explain on a separate paper.

1. Are you now, or have you ever been a member of, or in any way connected or associated with the Communist Party, or ever knowingly aided or supported the Communist Party directly, or indirectly through another organization, group or person, or ever advocated, taught, believed in, or knowingly supported or furthered the interests of communism? ☐ Yes ☒ No

2. During the period March 23, 1933 to May 8, 1945, did you serve in, or were you in any way affiliated with, either directly or indirectly, any military unit, paramilitary unit, police unit, self-defense unit, vigilante unit, citizen unit of the Nazi party or SS, government agency or office, extermination camp, concentration camp, prisoner of war camp, prison, labor camp, detention camp or transit camp, under the control or affiliated with:

   a. The Nazi Government of Germany? ☐ Yes ☒ No

   b. Any government in any area occupied by, allied with, or established with the assistance or cooperation of, the Nazi Government of Germany? ☐ Yes ☒ No

3. Have you at any time, anywhere, ever ordered, incited, assisted, or otherwise participated in the persecution of any person, because of race, religion, national origin, or political opinion? ☐ Yes ☒ No

4. Have you ever left the United States to avoid being drafted into the U.S. Armed Forces? ☐ Yes ☒ No

5. Have you ever failed to comply with Selective Service laws? ☐ Yes ☒ No

   If you have registered under the Selective Service laws, complete the following information:

   Selective Service Number: _____ Date Registered: _____

   If you registered before 1978, also provide the following:

   Local Board Number: _____ Classification: _____

6. Did you ever apply for exemption from military service because of alienage, conscientious objections or other reasons? ☐ Yes ☒ No

7. Have you ever deserted from the military, air or naval forces of the United States? ☐ Yes ☒ No

8. Since becoming a permanent resident, have you ever failed to file a federal income tax return? ☐ Yes ☒ No

9. Since becoming a permanent resident, have you filed a federal income tax return as a nonresident or failed to file a federal return because you considered yourself to be a nonresident? ☐ Yes ☒ No

10. Are deportation proceedings pending against you, or have you ever been deported, or ordered deported, or have you ever applied for suspension of deportation? ☐ Yes ☒ No

11. Have you ever claimed in writing, or in any way, to be a United States citizen? ☐ Yes ☒ No

12. Have you ever:

   a. been a habitual drunkard? ☐ Yes ☒ No

   b. advocated or practiced polygamy? ☐ Yes ☒ No

   c. been a prostitute or procured anyone for prostitution? ☐ Yes ☒ No

   d. knowingly and for gain helped any alien to enter the U.S. illegally? ☐ Yes ☒ No

   e. been an illicit trafficker in narcotic drugs or marijuana? ☐ Yes ☒ No

   f. received income from illegal gambling? ☐ Yes ☒ No

   g. given false testimony for the purpose of obtaining any immigration benefit? ☐ Yes ☒ No

   *Have you ever registered or voted in any election in the United States? Yes No*

13. Have you ever been declared legally incompetent or have you ever been confined as a patient in a mental institution? ☐ Yes ☒ No

14. Were you born with, or have you acquired in same way, any title or order of nobility in any foreign State? ☐ Yes ☒ No

15. Have you ever:

   a. knowingly committed any crime for which you have not been arrested? ☐ Yes ☒ No

   b. been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations? *NO-Court appearance* ☐ Yes ☒ No

( If you answer yes to 15, in your explanation give the following information for each incident or occurrence the city, state, and country, where the offense took place, the date and nature of the offense, and the outcome or disposition of the case).

---

## Part 8. Allegiance to the U.S.

If your answer to any of the following questions is "NO", attach a full explanation:

1. Do you believe in the Constitution and form of government of the U.S.? ☒ Yes ☐ No

2. Are you willing to take the full Oath of Allegiance to the U.S.? (see instructions) ☒ Yes ☐ No

3. If the law requires it, are you willing to bear arms on behalf of the U.S.? ☒ Yes ☐ No

4. If the law requires it, are you willing to perform noncombatant services in the Armed Forces of the U.S.? ☒ Yes ☐ No

5. If the law requires it, are you willing to perform work of national importance under civilian direction? ☒ Yes ☐ No

## Part 9. Memberships and organizations.

A. List your present and past membership in or affiliation with every organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place. Include any military service in this part. If none, write "none". Include the name of organization, location, dates of membership and the nature of the organization. If additional space is needed, use separate paper.

N / 2 NE

## Part 10. Complete only if you checked block " C " in Part 2.

How many of your parents are U.S. citizens?  ☐ One  ☐ Both  (Give the following about one U.S. citizen parent:)

| Family Name | Given Name | Middle Name |
|---|---|---|
| | N / A | |
| Address | | |
| | N / A | |

Basis for citizenship:
☐ Birth
☐ Naturalization Cert. No.

Relationship to you (check one):  N A
☐ natural parent  ☐ adoptive parent
☐ parent of child legitimated after birth

If adopted or legitimated after birth, give date of adoption or, legitimation: (month/day/year) _____ N/A

Does this parent have legal custody of you?  ☐ Yes  ☐ No    N / A

*(Attach a copy of relating evidence to establish that you are the child of this U.S. citizen and evidence of this parent's citizenship.)*

## Part 11. Signature. *(Read the information on penalties in the instructions before completing this section.)*

I certify or, if outside the United States, I swear or affirm, under penalty of perjury under the laws of the United States of America that this application, and the evidence submitted with it, is all true and correct. I authorize the release of any information from my records which the Immigration and Naturalization Service needs to determine eligibility for the benefit I am seeking.

| Signature | Date |
|---|---|
| ILHAME  A2212 | O2-02-00 |

**Please Note:** If you do not completely fill out this form, or fail to submit required documents listed in the instructions, you may not be found eligible for naturalization and this application may be denied.

## Part 12. Signature of person preparing form if other than above. *(Sign below)*

I declare that I prepared this application at the request of the above person and it is based on all information of which I have knowledge.

| Signature | Print Your Name | Date |
|---|---|---|

Firm Name and Address

### DO NOT COMPLETE THE FOLLOWING UNTIL INSTRUCTED TO DO SO AT THE INTERVIEW

I swear that I know the contents of this application, and supplemental pages 1 through ___, that the corrections, numbered 1 through ___ were made at my request, and that this amended application, is true to the best of my knowledge and belief.

ILHAME  A2212

*(Complete and true signature of applicant)*

Subscribed and sworn to before me by the applicant.

_____ JAN 2 2 2001
*(Examiner's Signature )*    Date

Maria Tibeu  11-5-03

X  _____

Form N-400 (Rev 07-17-91)N

"U.S. Government Printing Office 1996 — 420-773

6

Name   _AZZIL_

Date   JAN 2 2 2001

A   _073 231 211_

1. Who was the first President of the United States?

2. What are the first ten amendments to the Constitution called?

3. Who wrote the Declaration of Independence?

4. What are the 49th and 50th States of the Union?

5. Who are your two Senators?

6. What is the minimum voting age in the United States?

7. In what month do we vote for President?

8. What is the Capital of the United States?

9. Why are there 100 Senators in the Senate?

10. What is the date of Independence Day?

---

Reading  Test:

1. We live in a big house.

2. I can read and write in English.

3. The girl has a yellow cat.

I have three childrens.

# Exhibit 2

**Decision on Plaintiff's Application for Naturalization**



**U.S. DEPAR       _NT OF JUSTICE**

Immigration and Naturalization Service

### DECISION ON APPLICATION
### FOR NATURALIZATION

**Date:**  OCT 1 0 2002

**Ilhame Azziz**
**539 Washington Street, Unit # 3**
**Quincy, MA  02169**

*Immigration and Naturalization Service*
*John Fitzgerald Kennedy Federal Building*
*Government Center*
*Boston, Massachusetts 02203*

PLEASE REFER TO THIS FILE NUMBER

*A073231211*

## DECISION

On January 22, 2002, you appeared for an examination on your application for naturalization, which was filed in accordance with Section 316(a) of the Immigration and Nationality Act. After a complete investigation and examination of your application, it is determined that your application be denied for **failure to demonstrate that your residence status in the United States was obtained lawfully** pursuant to Title Eight, Section 318 of the Immigration and Nationality Act.

### SEE ATTACHED SHEET

If you desire to request a review hearing on this decision pursuant to Section 336(a) of the Act, you must file a request for a hearing within **30 days** of the date of this notice. If no request for a hearing is filed within the time allowed, this decision is **final.** A request for a hearing may be made to the District Director, with the Immigration and Naturalization Service Office that made this decision, on **Form N-336** with a fee of **$195.00.** A brief or other written statement in support of your request may be submitted with the Request for Hearing.

Any questions which you have may be answered by the Service office nearest your residence, or at the address shown in the heading to this letter.

Sincerely,

Steven J. Farquharson
District Director

Enclosure(s) N-336
cc:
By Certified Mail: 70993400001837296420
Form N-335
BY: ADS



## ATTACHMENT TO FORM N-335

File Number: A073231211

Date:

    OCT 1 0 2002

Section 318 of the Immigration and Nationality Act requires that except as otherwise provided, no person shall be naturalized unless he/she has been lawfully admitted for permanent residence in accordance with all the applicable provisions of the Act. It has been determined that you are ineligible for naturalization, in that you have failed to demonstrate that your residence status in the United States was obtained lawfully.

You received conditional permanent resident status pursuant to Section 245 of the Immigration & Nationality Act on January 25, 1995. You filed a Joint Petition to Remove Conditional Basis of Alien's Permanent Status (Form I-751) on November 4, 1996. On this application, you indicated that you were still engaged in a marital union with Christopher Gustafson (your citizen spouse). You testified that you were still married and living in a martial union with Christopher Gustafson. Your application was approved on November 27, 1996. You filed your Application for Naturalization (Form N-400) on February 15, 2000 and you were interviewed on Janaury 22, 2001. The record of proceeding reflects that you were married in Morocco and had several children by your Moroccan husband. You came to the United States and married a United States citizen without divorcing your Moroccan husband. Your United States citizen spouse was compensated for this marriage.

The applications and records that you presented to the Immigration & Naturalization Service are conclusive that your receipt of permanent residence status as a spouse of a United States citizen was fraudulent. You have not met the burden of establishing that you meet all of the requirements for naturalization, which requirements include establishing that you were lawfully admitted to the United States in accordance with the immigration laws. Accordingly, your application for naturalization is hereby denied pursuant to Section 318 of the Immigration and Nationality Act.

# Exhibit 3

**Plaintiff's Response to Denial of Application for Naturalization with Attachements**

# YASIN LAW OFFICE

*Azizah P. Yasin, Esq.*

339 Hancock Street
Quincy, MA 02171

Tel: (617) 256-8450
Tel: (617) 479-2500
Fax: (617) 479-9183

November 11, 2002

Steven J. Farquharson, District Director
U.S. Department of Justice
Immigration and Naturalization Service
JFK Federal Building
Government Center
Boston, MA 02203

     **RE:**   **Ilhame Azziz, A 073-231-211**
           **Naturalization Application**
           **Request for Hearing and Extension**

Dear Mr. Farquharson:

       Please be advised that I represent Ms. Ilhame Azziz regarding her naturalization application. Enclosed for your file is my G-28 Notice of Entry of Appearance. Ms. Azziz's naturalization application was denied on October 10, 2002. She is requesting a hearing on this matter to clarify some information on which the denial was based. Ms. Azziz is hereby requesting a hearing on this matter. Accordingly, attached is the following documentation:

1. Form N-336;
2. Affidavit of applicant Ms. Ilhame Azziz with Exhibits; and
3. Affidavit of Christopher Gustafson, United States citizen spouse.

       Also, Ms. Azziz is requesting an extension of the N-336 filing deadline, on the following grounds:

1. Ms. Azziz retained my office on June 25, 2002. On July 16, 2002, I submitted a FOIA request, Form G-639. On August 5, 2002 the Vermont Service Center acknowledged my request and forwarded it to the Boston District Office. On October 1, 2002 the Boston District Office acknowledged my request and assigned control number BOS2002002912. To date, I am still awaiting the file, which is needed to adequately represent my client.

2. Ms. Azziz is currently in the process of obtaining supporting affidavits from relatives and others who know her as well as her marriage to her United States citizen spouse. She was not able to obtain all supporting documentation

within the first thirty days and therefore requests an extension to accomplish this endeavor.

Thank you for your attention and consideration in this matter.

Very truly yours,

Azizah F. Yasin, Esq.

Attachments

cc:   Ilhame Azziz

OMB No. 1115-0180

**U.S. Department of Justice**
Immigration and Naturalization Service

# Request for a Hearing on a Decision in Naturalization Proceedings Under Section 336 of the Act

| Decision: ☐ Grant  ☐ Denial | Fee: |
|---|---|

| **1. In the Matter of:** (Name of Naturalization Applicant) | File Number: |
|---|---|
| Ilhame Azziz | **A**- 073 231 211 |

**2. I am filing a request for hearing on the decision dated:**

October 10, 2002

Dec11/02 003#26649 80S-EP
ñ-336        $195.00

**3. Please check the one block which applies:**

☐ I am *not submitting* a separate brief, statement or evidence.

☑ I *am submitting* a separate brief, statement and/or evidence with this form.

☑ I need _____ 30 _____ days to submit a brief, statement and/or evidence to INS. (May be granted only for good cause shown. Explain in a separate letter.)

**4. Person filing request:**

Name (Please Type or Print)

Azizah P. Yasin, Esq.

| Address (Street Number and Name) | (Apt. Number) |
|---|---|
| YASIN LAW OFFICE, 339 Hancock Street | |

| (City) | (State) | (Zip Code) |
|---|---|---|
| Quincy | MA | 02171 |

| Signature | Date (Month/Day/Year) |
|---|---|
| | 11/11/2002 |

☑ I am an attorney or representative and I represent the applicant requesting a hearing on a naturalization proceeding. (You must attach a Notice or Entry or Appearance (Form G-28) if you are an attorney or representative and did not previously submit such a form.)

(Person for whom you are appearing)

Ilhame Azziz

**5. Briefly state the reason(s) for this request for a hearing:**

Ms. Azziz is requesting a hearing to review INS' decision to deny her N-400

Application for Naturalization.  Ms. Azziz believes INS' decision was based on

misinformation and misunderstandings of the facts and chronology of events

relating to the filing of her N-400 application.  Please see attached affidavit

of Ms. Ilhame Azziz.

Form N-336 (Rev. 08/08/00)Y

3

**U.S. DEPARTMENT OF JUSTICE**
**IMMIGRATION AND NATURALIZATION SERVICE**

**IN RE: ILHAME AZZIZ**
**A 073-231-211**

<u>AFFIDAVIT OF ILHAME AZZIZ</u>
<u>IN SUPPORT OF REQUEST FOR HEARING</u>
<u>RE: INS' DENIAL OF NATURALIZATION APPLICATION</u>

My name is Ilhame Azziz and I currently reside at 230 Willard Street #1, Quincy, Norfolk County, Massachusetts 02169. I previously lived at 539 Washington Street #103, Quincy, Norfolk County, Massachusetts 02169 until July 2002. I am currently represented by Azizah P. Yasin, Esq., of Yasin Law Office, 339 Hancock Street, Quincy, MA 02171. Attorney Yasin filed a change of address card on my behalf, dated July 16, 2002, however, it appears that INS did not update its records to reflect my new address.

As noted below, I previously lived at 5017 41st Street, South, St. Petersburg, Florida 33711. When I moved to Massachusetts, I contacted INS and informed the Service of my new address. I was informed that my file would be updated and transferred to the Boston District office, and that I would be contacted in Boston for an interview. I was never contacted in Boston, except for the October 10, 2002 denial of my naturalization application.

In February 2000 I applied for naturalization. On October 16, 2002 I received the INS decision dated October 10, 2002, denying my application for naturalization. The denial was based on the following reasons:

1.    The evidence I presented to INS concluded that I fraudulently obtained permanent resident status as a spouse of a United States citizen;

2.    I did not meet the burden of establishing that I met all of the requirements for naturalization, which includes establishing that I was lawfully admitted to the United States;

3.    The INS record reflects that I was married in Morocco and had several children by my Moroccan husband; that I came to the United States and married a United States citizen without divorcing my Moroccan husband; and that my United States citizen spouse was compensated for the marriage.

It appears that the INS decision was based on misinformation or misreading of the information I submitted. This affidavit is therefore submitted in support of my request for a hearing to reconsider my naturalization application, and serves to clarify the circumstances related to my immigration status in the United States.

I am a native of Morocco, Africa. In June 1993, I traveled from Morocco to Quebec, Canada, where I completed a course to become a travel agent. In December 1993, I obtained a visitor's visa to visit my brother Essam Azziz, who is living in St.

**4**

Petersburg, Florida. I visited Essam from December 19, 1993 until January 9, 1994, when I returned to Canada to finish my studies. During my visit with Essam, I met his friend, Christopher Gustafson, and we began dating. Though I returned to Canada, Chris and I stayed in touch and had many telephone conversations. We fell in love and decided to get married once I finished school.

I completed the travel agent course in Canada and graduated on March 31, 1994. See Exhibit #1. On May 25, 1994, I returned to Florida, and on August 4, 1994 Chris and I got married in Florida. We entered into the marriage in good faith because we were in love and planned to spend the rest of our lives together. Chris was never given any money or any other compensation from me or anyone else for marrying me. Present at the wedding ceremony were my mother, father, and brothers Essam and Yassir Azziz. Chris and I lived together once we were married, and both our names were on the lease. In addition, we obtained joint motor vehicle insurance and a joint bank account at First Union Bank. I applied for conditional permanent residence based on my marriage, and on January 25, 1995 it was approved. On November 4, 1996 I filed a joint petition to remove the conditions of my permanent residence, which was approved on November 27, 1996 without an interview.

In February 1995, Chris and I planned a two-month-long trip to Morocco to visit my parents, who had returned there, as well as my other relatives. Because Chris was engaged in work and school (he was a waiter at the Hilton Hotel and was studying engineering at St. Petersburg Junior College) and could not leave with me, we agreed that I would travel first and he would meet me there once he could make arrangements with his school and work schedule. After I arrived, Chris kept changing his date of travel, then cancelled the trip altogether. I therefore shortened my trip and returned two weeks later, since the trip was planned for both Chris and myself to visit my family. When I returned home, Chris had left me with no explanation. I was devastated and didn't understand why he left because we had a good relationship and did not have any marital problems. Over time, I found him through his friends and relatives in Gainesville, Florida, Illinois, California, and Amsterdam, but he never told me why he left me. In or about December 1996, Chris came back to Florida. We tried to get back together, but in 1997 he told me that he wanted a divorce and couldn't make the marriage work. I suspected that Chris was cheating on me, so I finally agreed to the divorce. The divorce was granted on March 24, 1999. See Exhibit #2.

This was an emotionally difficult and confusing time for me. I had left Morocco and Canada, and did not mind relocating to the United States to make a life with Chris. I engaged in therapy, and my psychiatrist prescribed anti-depressants. I took the medication for one week because it made me drowsy and I slept all the time. During this time, my brother Essam's Moroccan friend, Abdelkouddous Chakir, befriended me, and because I was emotionally weak, I engaged in sexual relations with him. I became pregnant with my first child, Waleed Chakir, who was born on December 14, 1995. After Waleed was born, I stayed in a relationship with Abdelkouddous, and had two more children by him, Reda Chakir, born on January 2, 1997, and Soraya Chakir, born on January 30, 1998. All of my children are United States citizens. See Exhibit #3.

2

5.

Abdelkouddous Chakir and I began our relationship and dated only in the United States. We have never been married. Abdelkouddous is named as the father on my children's birth certificates, however, I did not put his name on their certificates until May 24, 1999, two months after my divorce from Chris was final. The divorce judgment identifies Chris as the father of my three children. See Exhibits #2 and #3.

On February 15, 2000, I filed in Florida for naturalization based on my marriage to Chris. I was interviewed in Florida on January 22, 2001. On June 7, 2001 INS sent a letter stating that I had to appear for a re-examination. See Exhibit #4. Because I had just moved to Massachusetts, I informed INS of the moved. See Exhibit #5. In July 2001, I received a letter stating that my case was transferred from Florida to Boston, and that the re-examination would be held in Boston. However, I have never received any information or date for re-examination in Boston. The only correspondence I received from Boston was the October 10, 2002 denial of my naturalization application.

On June 25, 2002 I retained Attorney Yasin, who filed a FOIA request for my entire INS file. At the same time, Attorney Yasin filed a change of address, as I had moved within Quincy, Norfolk County, Massachusetts in July 2002. Attorney Yasin received responses from the INS offices in Vermont and Boston District Office, stating they received her FOIA request and would send the file soon. See Exhibit 6.

On October 16, 2002, I received the October 10, 2002 denial of my naturalization application. This decision was mailed to my old Quincy address, thus it appears INS did not update its records to reflect my new Quincy address. See Exhibit #7. From the time I sent in the notice that I relocated to Boston in June 2001 to October 10, 2002, INS never contacted me or scheduled an interview for re-examination at the Boston District Office.

I have located Christopher through the Internet public records search, in Illinois. I contacted Chris and he stated that he was never compensated for our marriage, and affirms that our marriage was in good faith at its inception. In support of my request for a hearing, attached please find a notarized affidavit from my ex-husband, Christopher Gustafson, Exhibit #8.

I am also requesting an extension to my request for a hearing, on the basis that my attorney is still waiting for the FOIA request for my file, and I am in the process of obtaining additional affidavits from people who know me and my relationship with Chris.

I affirm that the above statement is made under the pains and penalties of perjury,


_Ilhame Azziz_ _____ -11/11/02
Ilhame Azziz

Commonwealth of Massachusetts

Then personally appeared before me, one Ms. Ilhame Azziz, who affirms the above statement is provided accurately and to the best of her knowledge and ability, and that her signature is a free act and deed, sworn to me this 11th day of October 2002.

Notary: _____          My Commission Expires: February 9, 2007

**EXHIBIT 1**



# Centre de Formation en Tourisme
## ATTESTATION D'ÉTUDES

Nous attestons que

*Ilhame Aziz*

a suivi avec succès le cours de formation professionnelle

# Agent de voyages

d'une durée de 362 heures, approuvé en vertu de la loi de l'enseignement privé
du Ministère de l'Éducation de la province de Québec (Co...

Fait à Montréal
le 31 mars 1994

Directeur
Centre de Formation en Tourisme Inc.

Permis du Ministère de l'Éducation no. 749720.
Enseignement professionnel secondaire pour adultes.

**EXHIBIT 2**

## IN THE CIRCUIT COURT IN AND FOR PINELLAS COUNTY, FLORIDA
### CIRCUIT CIVIL CASE NO.98-012244-FD-24

**IN RE: THE MARRIAGE OF**
**ILHAME AZZIZ;**

               Petitioner

and

**CHRISTOPHER  GUSTAFSON,**

               Respondent

_____/

### FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE

THIS CAUSE came before the Court upon the Report and Recommendations of the General Master entered after hearing of March 24, 1999, on Petition for Dissolution of Marriage. The Court, after reviewing said Report and the record herein and being otherwise advised in the premises, finds that this Court has jurisdiction over the parties and  the subject matter of this proceeding. The court further finds that the marriage of the parties is irretrievably broken and should be dissolved, and that the findings set forth in the Report and Recommendation of the General Master are sufficient to form the basis for the Order of this Court. The General Master's findings are hereby confirmed and the relief recommended by the General Master is hereby made an order of this Court.  It is therefore

**ORDERED and ADJUDGED** that:

1.    The marriage entered into between **ILHAME AZZIZ**  and **CHRISTOPHER GUSTAFSON,** on August 4, 1994, be and is hereby **DISSOLVED.**

2.    Three children were born while the parties were married to one another: WALLEED CHAKIR, born December 14, 1995, REDA CHAKIR, born January 2, 1997 and SORAYA CHAKIR, born January 30, 1998.   The Husband is not the children's biological father and shall not be held responsible for the support of the children.  The legal father status, as to  WALLEED CHAKIR, REDA CHAKIR and SORAYA CHAKIR, has been shifted to the biological father of the children  pursuant to separate Order entered herein.

**Circuit Civil Case #98-012244-FD-24**
**Azziz v. Gustafson**
**Page 2**

      3.    The Wife's former name is hereby restored and she shall be known hereafter as

**ILHAME AZZIZ.**

      4.    The pleadings are amended to conform to the evidence.

      **DONE AND ORDERED** in Chambers, Pinellas County, Florida on this _____ day of

_____, 19_____.

ORIGINAL SIGNED
TRUE COPY

**MAR 2 5 1999**

DAVID A. DEMERS
Circuit Judge

_____
**CIRCUIT JUDGE**

Copies to:
Husband
Wife

12.

Page _2_ of _3_

_N/A_   The parties entered into a Marital Settlement Agreement dated
_____, 19____, and filed herein.  The Marital Settlement Agreement was
entered into freely and voluntarily, is reasonable and should be confirmed by court
order and incorporated into the Final Judgment of Dissolution of Marriage.

_N/A_  The parties have the following nonmarital assets/liabilities:

~~Wife~~                                              ~~Husband~~

✓ The Husband is not the biological father of the following
minor children born to the Wife while the parties remained
married to one another: Walleed Chakir, born 12-14-95,
Reda Chakir, born 1-2-97, and Soraya Chakir, born
2-30-98. The Husband should not be held responsible
for the support of the children. No further children are
expected.

_NA_  The following distribution of marital debts and assets is pursuant to
the parties' oral stipulation.  The parties entered into the oral stipulation
freely and voluntarily and with full knowledge.  The provisions of the stipulation
are reasonable and should be confirmed by court order and incorporated into the
Final Judgment of Dissolution of Marriage.

_N/A_ The parties have the following marital debts which should be equitably
distributed as follows:

The Husband should be solely responsible        The Wife should be solely responsible
for the following marital debts and should      for the following marital debts and
hold the Wife harmless therefrom:               hold the Husband harmless therefrom:

13.

IN THE CIRCUIT COURT FOR PINELLAS COUNTY, FLORIDA

CIRCUIT CIVIL CASE NO. _98-12244 FD-24_

IN RE: The Marriage of:

_Ilhame Azziz_
Petitioner

and

_Christopher Gustafson_
Respondent

Report and Recommendation of General Master —
Final Hearing/Dissolution of Marriage

This Cause came before the undersigned on _3-24_, 19_99_, for Final Hearing on the (Counter) Petition for Dissolution of Marriage, the Petitioner

☑ having appeared with counsel/(pro se)

____ having failed to appear,

and Respondent

☑ having appeared with counsel/(pro se)

____ having failed to appear.

After hearing testimony and being fully advised in the premises, the undersigned makes the following findings of fact and conclusions of law:

This Court has jurisdiction over the subject matter of this proceeding, at least one of the parties having resided in the State of Florida for at least six (6) consecutive months immediately prior to the filing of the Petition.

☑ The Court has jurisdiction over the parties.

N/A A default was properly entered in this case.

Respondent was served by personal service, pursuant to Florida law, outside of the State of Florida.

N/A The Court has jurisdiction over the Respondent pursuant to Florida Statute 48.193(1)(e).

N/A The Court lacks in personam jurisdiction over the Respondent.

N/A The Respondent was served by Constructive Service pursuant to Chapter 49 of the Florida Statutes. The Petitioner has made a diligent search and inquiry to locate the Respondent, having taken all actions set forth in the Petitioner's Affidavit of Diligent Search filed herein, and has been unable to locate the Respondent.

N/A The Court has jurisdiction to make a child custody determination pursuant to Chapter 61 of the Florida Statutes.

☑ This matter is properly before the undersigned pursuant to an Order of Referral to General Master, no objections to said referral having been filed.

The parties were married to each other _8-4_, 19_94_ at _St. Petersburg, FL_, and separated in _1995_. The marriage is irretrievably broken and should be dissolved.

N/A The child(ren) of the marriage is/are no longer minor(s) and no further children are expected.

N/A There have been no children born or adopted of the marriage and none are expected.

14.

Page __3__ of __3__

_N/A_    The parties agreed orally in open Court that each shall be solely responsible for all debts in his/her sole name and shall hold the other harmless therefrom.

_✓_    There are no marital debts subject to equitable distribution.

_N/A_    All property, real or personal, acquired by either party, or both of them, prior to or during the marriage, has already been amicably divided.

_N/A_    The Wife seeks restoration of her former name. Her former name should be restored and she should be known hereafter as _Wilhame Azziz_.

_N/A_    The parties should be ordered to return to court on _____, _____, 19____ at _____ m., at 150 - 5th Street No., Room 230, St. Petersburg, Florida for a hearing to address the issue of _____

_✓_    Both parties have waived the ten (10) day objection period of Fla. R. Civ. P. 1.490.

_N/A_    Other: _____

_✓_    The pleadings should be amended to conform to the evidence presented.

It is therefore

_✓_    RECOMMENDED that a Final Judgment of Dissolution of Marriage be entered, dissolving the marriage of the parties and ordering the recommended relief set forth above.    It is further

_N/A_    RECOMMENDED that the Court retain jurisdiction of this cause and of the parties to enforce this Final Judgment and for entry of such other and further Orders as may be just and proper.    It is further

_N/A_    RECOMMENDED that the Court enter said Final Judgment if no written objections to this Report and Recommendation are filed within ten (10) days of service upon the parties.

_✓_    RECOMMENDED that the Court enter said Final Judgment without further delay.

_Kay D Sloan_

General Master

CERTIFICATE OF SERVICE

Copies furnished by hand delivery/regular U.S. Mail, this _25_ day of _March_, 19_99_, to:

_✓_ Husband  5 Newell Rd, # 2, E. Palo Alto, CA 94303
_✓_ Wife  3281 - 38th Way, S, Unit C, St. Pete, FL 33711

15.

## IN THE CIRCUIT COURT FOR PINELLAS COUNTY, FLORIDA
## CIRCUIT CIVIL CASE #98-012244-FD-24

IN RE: THE MARRIAGE OF:

**ILHAME AZZIZ,**
        Petitioner,

and

**CHRISTOPHER GUSTAFSON,**
        Respondent.

## ORDER APPROVING REPORT AND RECOMMENDATION
## OF THE GENERAL MASTER

THIS CAUSE came before the Court on the Report and Recommendation of the General Master after hearing on the 24th day of February, 1999, on the Wife's Petition for Dissolution of Marriage. The Court, being advised in the premises finds that no Exceptions to the Report have been filed and the Report and that the Recommendations should be confirmed by Order of this Court. It is therefore

**ORDERED and ADJUDGED** that the Report and Recommendation of the General Master on the Wife's Petition for Dissoluton of Marriage, be and is hereby approved, ratified, confirmed and adopted as an Order of this Court and the parties are specifically directed to abide by the recommendations therein. It is further

**ORDERED and ADJUDGED** the Final Hearing is continued to the **24th day of March, 1999, at 1:30 p.m.**, at Room 230, 150 Fifth Street North, St. Petersburg, Florida, **AT WHICH TIME, DATE AND PLACE BOTH PARTIES ARE HEREBY ORDERED TO APPEAR. IF THE HUSBAND IS UNABLE TO TRAVEL TO ST. PETERSBURG, FLORIDA FOR THE HEARING, HE SHALL APPEAR BY TELEPHONE BY CALLING 727/582-7559 at the time and place set forth above.**

**DONE and ORDERED** in St. Petersburg, Pinellas County, Florida, this _____ day of _____, 19____.

ORIGINAL SIGNED
TRUE COPY

MAR 1 8 1999

           CIRCUIT JUDGE

DAVID A. DEMERS
Circuit Judge

Copies to Petitioner & Respondent

*16.*

**EXHIBIT 3**

/7.





18.

Nov-14-05  10:55am  From-CHIEF COUNSEL BOSTON      671 565 4821



# STATE OF FLORIDA

## OFFICE OF VITAL STATISTICS
### CERTIFICATION OF BIRTH

NAME              SORAYA   CHAKIR

DATE OF BIRTH        11/30/98      SEX: FEMALE

PLACE OF BIRTH       PINELLAS COUNTY, FLORIDA

CERTIFICATE NUMBER: 109-98-015399

DATE FILED:      12/03/98        DATE ISSUED:  5/24/99

MOTHER'S MAIDEN NAME  ILHAM  AZZIZ

FATHER'S NAME    ABDELKOUDDOUS  CHAKIR

This is to certify that this is a true abstract of the official record filed with this office.

By _____  State Registrar

WARNING

4142111

HEALTH

DOH Form 1553A (9-98)

199

**EXHIBIT 4**

21.



**U.S. DEPARTMENT OF JUSTICE**
**Immigration and Naturalization Service**
*5524 W. Cypress Street*
*Tampa, Florida. 33607*

June 7, 2001

Ilhame Azziz
5017 41st. Street S.
St. Petersburg, Fl. 33711

A 073 231 211

On January 22, 2001, you appeared for an examination on your Application for Naturalization (Form N-400), which was filed in accordance with Section 316(a) of the Immigration and Nationality Act.

A review of your file has raised questions regarding your continued physical presence in the United States and the possibility of false testimony concerning the status of your marital union at the time of filing Form I-751 for the removal of conditions to your residency.

You are hereby notified to appear for a re-examination on you Application for Naturalization at the date, time and place indicated below. If for any reason you cannot keep this appointment, return this letter immediately with your explanation and a request for a new appointment; otherwise, no further action will be taken on your application.

Please report to:      5524 W. Cypress St. Tampa, Fl.
        On:        July 2, 2001 @: 1:30PM

Purpose of Interview: Review of your application.

BRING WITH YOU: Your Alien Registration Card.
                All passports in your possession.
                SEE ATTACHMENT

PLACE THIS LETTER IN THE APPOINTMENT SLOT IN THE APPOINTMENT WAITING ROOM.

F. PULEO

22.

**EXHIBIT 5**

671 565 4921    T-078    P.031/042    F-131

Nov-14-05    10:56am    From-CHIEF COUNSEL BOSTON

LAW OFFICES
## HRONES AND GARRITY
LEWIS WHARF - BAY 232
BOSTON, MASSACHUSETTS 02110-3927

STEPHEN HRONES
ADEBONKE O. LIPEDE

OF COUNSEL
MURRAY A. KOHN
DONALD HARWOOD
(ALSO MEMBER OF NEW YORK BAR)

TELEPHONE (617) 227-4019
FACSIMILE (617) 227-3908
E-MAIL Azhro@aol.com

PAUL J. GARRITY
(ALSO MEMBER OF NEW HAMPSHIRE BAR)

NEW HAMPSHIRE OFFICE:

14 LONDONDERRY ROAD
LONDONDERRY, NEW HAMPSHIRE 03053
TELEPHONE (603) 434-4106
TELEFAX (603) 437-6714

Mr. Francis Puleo
U.S. Department of Justice
Immigration and Naturalization Service
5524 W. Cypress Street
Tampa, FLA.33607                                          June 18, 2001

RE. Ilhame Azziz          A 073-231-211

Dear Mr. Puleo

       Our firm represents Ms. Ilhame Azziz in her immigration matter. Pleased be advised that Ms. Azziz has moved to the Boston area and as a result it will be extremely difficult and burdensome for her to attend the interview that is currently scheduled for July 2 in Tampa.

       I inquired at the INS office in Boston, where I spoke with investigator Delong, who stated that Ms. Azziz' case could be transferred to the Boston office upon request. The purpose of this letter therefor is to request that her file be transferred to Boston INS Office, so that she may be able to address the matter here. Your letter dated June 7 stated that she could arrange another appointment if she gave an explanation. The explanation given is that she no longer resides in Florida and cannot travel to Florida without great hardship at the present time. She resides in Boston and intends to remain here. She is employed here and has small children who are her dependants. Traveling to Florida for an interview would be unduly burdensome at present. She would prefer if possible to have the Immigration matters transferred here as well.

       Pleased contact our office, by phone if you prefer, at 617-227-4019, if you have any questions. Ms. Azziz intends to comply with whatever the INS requires of her, but would prefer to do so here in Boston, where she now resides.

                    Sincerely,

                    William J. Megowen
                    Hrones & Garrity
                    Mass. BBO 648411

**EXHIBIT 6**



**U.S. Department of Justice**
Immigration and Naturalization Service

ESC2002004019

*75 LOWER WELDEN STREET*
*ST ALBANS, VT 05479-0001*

August 5, 2002

Asisah P Yasis  Esq
339 Hancock Street
Quincy, MA 02171

Dear Asisah P Yasis  Esq:

    Your request was received in this office on 08/05/2002 regarding the subject: Azziz, Ilhame.

    We have searched for records that relate to your request and determined that if such records exist, they would be maintained under the jurisdiction of the INS office at the following address:

        BOSTON DISTRICT OFFICE
        JFK FEDERAL BUILDING
        GOVERNMENT CENTER
        BOSTON, MA 02203

    We have forwarded your request to that office for consideration and direct reply to you.  Any further inquiries should be sent to the FOIA/PA officer at the office identified above.

        Sincerely,

        *Paul E Novak Jr.*

        PAUL E. NOVAK Jr.
        SVC CENTER DIRECTOR

RECEIVED
AUG 07 2002

26.

**U.S. Department of** ⋅ ⋅ ⋅ ice
Immigration and Naturalization Service

BOS2002002912

*JFK FEDERAL BUILDING*
*GOVERNMENT CENTER*
*BOSTON, MA 02203*

October 1, 2002

AZIZAH P. YASIN, ESQ
339 HANCOCK STREET
QUINCY, MA 02171

Dear AZIZAH P. YASIN, ESQ:

   We received your request for information relating to: AZZIZ, ILHAME, on 10/01/2002.

   Your request is being handled under the provisions of the Privacy Act (5 U.S.C.552A). It has been assigned the following control number: BOS2002002912. Please cite this number in any further inquiry about this request.

   In accordance with Department of Justice Regulations (28 CFR 16.41), your request is deemed to constitute an agreement to pay any fees that may be chargeable up to $25.00. When applicable, fees may be for duplication of copies at the rate of $.10 per copy. There is no charge for the first 100 copies; any remaining charges for duplication must exceed $14.00 before we will charge you any fees. Most requests do not require any fees; however, if fees in excess of $25.00 are required, you will be notified prior to processing.

   Additionally, we respond to requests on a first-in, first-out basis and on a multi-track system. With this system we consider each request according to the complexity and volume so that requesters with a simple and quick response do not wait for extended periods of time while we review complex voluminous requests.

   We will answer your request as quickly as possible. If you have further questions, please address your inquiry to this office at the above address, Attention: FOIA/PA Officer.

                                        Sincerely,

                                        KAREN-ANNE HAYDON
                                        ADD/EXAMINATION

27.

**EXHIBIT 7**





**U.S. DEPARTM[ ] T OF JUSTICE**

Immigration and Naturalization Service

**DECISION ON APPLICATION
FOR NATURALIZATION**

Date: **OCT 1 0 2002**

**Ilhame Azziz**
**539 Washington Street, Unit # 3**
**Quincy, MA  02169**

*Immigration and Naturalization Service*
*John Fitzgerald Kennedy Federal Building*
*Government Center*
*Boston, Massachusetts 02203*

PLEASE REFER TO THIS FILE NUMBER

*A073231211*

## DECISION

On January 22, 2002, you appeared for an examination on your application for naturalization, which was filed in accordance with Section 316(a) of the Immigration and Nationality Act.  After a complete investigation and examination of your application, it is determined that your application be denied for **failure to demonstrate that your residence status in the United States was obtained lawfully** pursuant to Title Eight, Section 318 of the Immigration and Nationality Act.

### SEE ATTACHED SHEET

If you desire to request a review hearing on this decision pursuant to Section 336(a) of the Act, you must file a request for a hearing within **30 days** of the date of this notice.  If no request for a hearing is filed within the time allowed, this decision is **final.**  A request for a hearing may be made to the District Director, with the Immigration and Naturalization Service Office that made this decision, on **Form N-336** with a fee of **$195.00.**  A brief or other written statement in support of your request may be submitted with the Request for Hearing.

Any questions which you have may be answered by the Service office nearest your residence, or at the address shown in the heading to this letter.

Sincerely,

Steven J. Farqu[ ]son
District Director

Enclosure(s) N-336
cc:
By Certified Mail: 70993400001837296420
Form N-335
BY: ADS

**30.**

Nov-14-05   10:57am   From-CHIEF COUNSEL BOSTON    671 565 4921    T-078  P.036/042  F-137

Department of Justice
Immigration and Naturalization Service

OMB No. 1115-0003; Exp. 10/31/04
## Alien's Change of Address Card

| NAME (Last in CAPS) | (First) | (Middle) | I AM IN THE UNITED STATES AS: |
|---|---|---|---|
| Azziz | Ilhame | | ☐ Visitor   ☑ Permanent Resident |
| | | | ☐ Student   ☐ Other ............. (Specify) |

| COUNTRY OF CITIZENSHIP | DATE OF BIRTH | COPY NUMBER FROM ALIEN CARD |
|---|---|---|
| Morocco | March 2, 1973 | **A**  073-231-211 |

| PRESENT ADDRESS | (Street or Rural Route) | (City or Post Office) | (State) | (ZIP Code) |
|---|---|---|---|---|
| 230 Willard Street Apt. #1⁙3 | | Quincy | MA | 02169 |

(IF ABOVE ADDRESS IS TEMPORARY) I expect to remain there _____ years _____ months

| LAST ADDRESS | (Street or Rural Route) | (City or Post Office) | (State) | (ZIP Code) |
|---|---|---|---|---|
| 539 Washington Street Apt. | | Quincy | MA | 02169 |

I WORK FOR OR ATTEND SCHOOL AT: (Employer's Name or Name of School)

| (Street Address or Rural Route) | (City or Post Office) | (State) | (ZIP Code) |
|---|---|---|---|
| | | | |

| PORT OF ENTRY INTO U.S. | DATE OF ENTRY INTO U.S. | IF NOT A PERMANENT RESIDENT, MY STAY IN THE U.S. EXPIRES ON: (Date) |
|---|---|---|
| Tampa, Florida | 12/19/1993 | |
| SIGNATURE | DATE  07/16/02 | |

AR-11 (Rev. 02/19/02)Y

---

## ALIEN'S CHANGE OF ADDRESS CARD

This card is to be used by all aliens to report change of address within 10 days of such change.

The collection of this information is required by Section 265 of the I&N Act (8 U.S.C. 1305). The data used by the Immigration and Naturalization Service for statistical and record purposes and may be furnished to federal, state, local and foreign law enforcement officials. Failure to report is punishable by fine or imprisonment and/or deportation.

This card is not evidence of identity, age, or status claimed.

**Public Reporting Burden.** Under the Paperwork Reduction Act, an agency may not conduct or sponsor an information collection and a person is not required to respond to an information collection unless it displays a currently valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose the least possible burden on you to provide us with information. Often this is difficult because some immigration laws are very complex. This collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including for reducing this burden to: Immigration and Naturalization Service, 425 I Street, N.W., Room 4034, Washington, DC 20536; OMB No. 1115-0003. *Do not mail your completed form to this address.* MAIL YOUR FORM TO THE ADDRESS SHOWN BELOW:

U.S. DEPARTMENT OF JUSTICE
Immigration and Naturalization Service
HQ ORM
425 I Street NW
ULLICO 4th Floor
Washington, DC 20536

**31.**

Case 1:05-cv-10751-NMG    Document 10-3    Filed 04/19/2007    Page 32 of 36

**EXHIBIT 8**

My name is Christopher R. Gustafson and I reside at 2621 2nd Av, Rockford, Illinois
61107, Tel #815-394-0982. I met my ex-wife, Ilhame Azziz in December 1993 when she
was studying in Canada and came to St. Petersburg, Florida to visit here brother.
I was a good friend with her brother, Issam Azziz, and he introduced me to Ihame.
After she went back to Canada, we stayed in touch over the telephone and we fell in love.
We were happy in each other's company and decided to get married and she returned to
St. Petersburg after she graduated from her course of study in Canada. We planned to be
married forever and got married on August 4, 1994. I met Ilhame's parents and they
attended the wedding ceremony in Florida, along with her brothers, Issam and Yassir.

We lived together for about seven months. Ilhame's parents returned home to Morocco
and Ilhame and I planned a trip to Morocco so I could see her home country. We planned
to go for two months beginning February 1995, but I asked Ilhame to go ahead of me
since I had business and schooling to tend to before I could leave. After Ilhame went to
Morocco I cancelled my trip and told her that I would no be joining her. Ilhame cut her
trip short and returned two weeks after going because she wanted to be in Morocco with
me. But I left Ilhame and St Petersburg because of financial troubles that Ilhame knew
nothing about. Even after I left her, somehow she found ways to contact me in
Gainesville, Florida, Chicago, Illinois when I was staying with my parents for a while,
and in Phoenix, Arizona. Every time she called me she wanted to know why I left her, but
I never told her.

I know I caused her the pain and humiliation with her family. After I left Ilhame, she
initially found me and we spoke in August 1996. She told me that she got involved with
somebody else in Florida and had her first child in December 1995. She also told me that
she had problems with the father of her children and they separated. I was in school in
phoenix but I promised that I would come back because I really loved her and in
November 1996 we filed together for her permanent green card. In November 1996
Ilhame was approved even though no one from INS contacted me for the interview.

In December 196, I returned to St Petersburg to be with Ilhame but after her second child
was born in January 1997, I just couldn't deal with the fact that Ilhame tried to move on
after I abandoned her in 1995 and had children. I left her again and in 1999 when I had
moved to Palo Alto, California, I called Ilhame in St Petersburg and asked her for a
divorce because I decided that I could not return to St Petersburg. I gave Ilhame my
address in California to send me the divorce papers. While I was on a business trip in
Amsterdam, the judge spoke to me on the telephone at the hearing and granted the
divorce.

I was never given any money or other compensation for marrying Ilhame. I asked Ilhame
to marry me because I was in love with her. I swear that the above statement is true and
made under the pains and penalties of perjury of the laws of the states of Massachusetts,
Florida and Illinois.

_Christopher R. Gustafson_ Date: 1/7/02 Notary Public _____
Christopher R. Gustafson        My Commission expires: 9-10-04.

OFFICIAL SEAL
RICKY W SCHINDLER

33.

# Exhibit 4

**Decision on Naturalization Hearing**

# DEPARTMENT OF HOMELAND SECURITY

Citizenship and Immigration Services

DEC 15 2004

John Fitzgerald Kennedy Federal Building
Government Center
Boston, Massachusetts 02203

*Please Refer to this File Number:* **A073 231 211**

Ilhame Azziz
539 Washington Street Unit #3
Quincy Ma 02169

## DECISION ON NATURALIZATION HEARING

A review of the record indicates that on January 25, 1995, you received conditional permanent residence status as the spouse of a United State citizen, whose marriage was of a duration of less than two (2) years at the time of adjudication. On November 06, 1996, you filed a Joint Petition to Remove the Conditional Basis of Alien's Permanent Resident Status, Form I-751, pursuant to Section 216 of the Immigration and Nationality Act. Both you and your petitioning spouse signed this petition and both listed 1824 Shore Drive S #117 South Pasadena, Florida as your address. You claim that neither of you had any children. Contrary to the fact you had one child whom you named Waleed Chakir, born in the United States on December 14, 1995. The father of this child was not your United States Citizen spouse but rather an individual named Abdelkouddous Chakir whom was in the United States illegally. Based on the information you provided on the petition and submitted in support of your application, your petition was approved.

On February 28, 2000, you filed an Application for Naturalization with the Tampa District Office. The application was filed pursuant to Section 316 of the Immigration and Nationality Act, Title 8 U.S.C. 1427. On January 22, 2001, you were interviewed under oath in Tampa, Florida in reference to the above application. You claimed you were divorced from your United States citizen spouse. You testified you only had three children. The application for naturalization was denied on October 10, 2002. The denial is part of the record of proceedings and references Section 318 of the Immigration and Nationality Act, 8 U.S.C. 1429, which states in part: ...No person shall be naturalized unless he or she has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this Act. The burden of proof shall be upon such person to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States, but in presenting such proof he shall be entitled to the production of his immigrant visa, or of other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry.

On December 11, 2002, you filed (Form N-336) a request for a hearing on a decision on naturalization proceedings under Section 336 of the Immigration and Nationality Act. Along with the above Form N-336 you provided a sworn affidavit. In the affidavit you indicate that "it appears the denial was based on misinformation ,or misreading of the information I submitted." Your affidavit indicates that you and the petitioner lived together "once we were married." According to the visa petition the petitioner, Christopher Gustafson did not move until September 1994. You stated in your affidavit that you were befriended by Abelkouddous Chakir and because you were "emotionally weak, you engaged in sexual relations with him." Mr. Abelkouddous Chakir is the father of all of your children. Currently you have four children by this man. The fourth child was not identified until the date of your hearing at Boston, Massachusetts on November 05, 2003, in which the officer pressed you more than once as to how many children you had. In the affidavit from your ex-husband, Christopher R. Gustafson he swears that you and he lived together for "about seven months." Mr. Gustafson swears in his affidavit that he left Florida because of financial troubles that you knew nothing about. Mr. Gustafson also swears that he last spoke to you in August of 1996. Mr.Gustafson swears that in August of 1996 you told him you were involved with someone else. Mr. Gustafson swears he filed the petition to remove conditions on your residence with you in November of 1996. Mr. Gustafson swears that he returned to Florida at that time and then left you again before your second child was born in January 1997.

This is contradicting to the above testimony where he stated he last spoke to you in August of 1996. According to your testimony on the date of your hearing at Boston, Massachusetts on November 05, 2003, you testified that you had mailed him the joint petition to remove conditions to an address in Phoenix Arizona. The affidavits along with your testimony are contradicting. The information regarding the total number of children you had was omitted on the application for naturalization and then again to the officer in Tampa Florida on January 22, 2001. It was also omitted again on your affidavit you submitted with Form N-336 requesting a hearing. During the hearing interview on November 05, 2003, you also testified to the officer that one of the reasons you left Florida to return to Morocco was an encounter with law enforcement agents. It was not clear to the officer as to what you were referring too as you had testified earlier that you had not ever been arrested or had any appearances at court.

**Matter of S – and B—C**, 9 I&N Dec. 1168, states that the misrepresentation tends, to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in properly determination that he be excluded.

Your failure to inform the Service of your child born to another man plus your failure to disclose your fourth child at the naturalization interview or in the sworn affidavits shut of a line of questioning regarding your marriage to your United States citizen spouse. The discrepancies in the affidavits question your good moral character and the ability to properly determine your eligibility. There appears to be serious discrepancies in your testimony throughout your immigration history inasmuch as you have omitted material facts in the granting of your conditional permanent residence and the removal of your conditional status and then again on your application for naturalization. The applications and testimony which you have presented to the Service in support of your request for naturalization are conclusive that your receipt of residence status as a permanent residence was based on testimony that was less than forthright. You have not met your burden of establishing that you have met all the requirements for naturalization, which requirements include establishing that you were lawfully admitted to the United States in accordance with the immigration laws and that you are a person of good moral character.

Section 101(f) of the Immigration and Nationality Act states in part…for the purpose of this Act- No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is or was(6) one who has given false testimony for the purpose of obtaining any benefits under this Act;

After a complete review of the Application for Naturalization, the administrative record and your Service file, the reviewing officer has determined that the grounds for denial have not been overcome. If you wish to request judicial review of this final determination of your Application for Naturalization, you may file a petition for review in the United States District Court having jurisdiction over your place of residence, in accordance with Chapter 7 of Title 5, United States Code. You must do so within the 120-day period following this notice. Pursuant to Title 8 C.F.R. 336.9, the petition for review shall be brought against the Immigration and Naturalization Service and service of the petition for review shall be made upon the Attorney General of the United States and upon the official in charge of the Service office where the hearing was held pursuant to subsection 336.2.

Sincerely,

Denis C. Riordan
District Director

CC:     Azizah P. Yasin Esq.
           339 Hancock Street
           Quincy Ma 02171