UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                  )
ILHAME AZZIZ,                     )
         Plaintiff,               )
                                  )
v.                                )   Civil Docket No. 05-10751-NMG
                                  )
MICHAEL CHERTOFF, as              )
Secretary of the Department       )
of Homeland Security, et al.,     )
         Defendants.              )
                                  )
```

**REPLY BRIEF IN SUPPORT OF PENDING
MOTION FOR SUMMARY JUDGMENT**

The defendants in the above-captioned matter respectfully request that this Court grant summary judgment in favor of the defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure for the reasons previously submitted by the defendants and for the additional reasons set forth below.

**ARGUMENT**

Previously, in the defendants' memorandum in support of its motion for summary judgment, the defendants set forth several factors in support of its position that the plaintiff failed to tell the truth during her application process. The defendants alleged that this failure of the plaintiff to tell the truth was not an isolated incident, rather, it was consistent with a pattern of deception initiated by the plaintiff throughout her citizenship process. Based on these allegations, the defendants determined that the plaintiff's failure to tell the truth was clear evidence that she was not a person of good moral character

under the law. Consequently, the defendants argue that the denial of the plaintiff's application was proper.

One of the allegations made by the defendants in support of its position that the plaintiff had failed to tell the truth during her citizenship process was that the plaintiff had failed to mention her fourth child who was fathered by Abdelkouddous Chakir, an illegal immigrant from Morocco who was not the legal husband of the plaintiff, in her Application for Naturalization. Docket Entry #10, p. 8.

In response to this allegation, the plaintiff states that she gave birth to her fourth child of Chakir after she signed her Application for Naturalization but before it was received by Customs and Immigration Services (CIS). Docket Entry 11, pp. 1-2. Having received and reviewed the Administrative Record, the defendants admit that the plaintiff is correct. Consequently, the defendants rescind that specific allegation.

Regarding the defendants' allegation that the plaintiff submitted an affidavit in support of the application for naturalization in which she failed to admit that she had a fourth child with Chakir, the plaintiff responds:

> The affidavit is explicitly to counter the claims of the Service that the plaintiff entered into a false marriage with her first husband. She mentions the three children to whom she gave birth while she was still legally married to her first husband. She does not mention a fourth child because the child is not relevant to the argument she makes in that section; however, she never denies having a fourth child and she

>never states that she has only three children.  The
>omission of her fourth child does not constitute giving
>false testimony, as the defendants claim.

Docket Entry 11, p. 2 (internal citations omitted).

What the plaintiff actually stated in her affidavit was the following:

>I became pregnant with my first child, Waleed Chakir,
>who was born on December 14, 1995.  After Waleed was
>born, I stayed in a relationship with Abdelkouddous,
>and had two more children by him, Reda Chakir, born
>January 2, 1997, and Soraya Chakir, born on January 30,
>1998.  All of my children are United States Citizens.

Docket Entry 10, Exhibit 3, p. 5; AR-0054[1].

As previously stated in the defendants motion for summary judgment, at the time that the plaintiff signed this affidavit, she had already given birth to a fourth child, Anis Chakir, of which Abdelkouddous Chakir was the biological father.  The plaintiff's failure to mention her fourth child was an intentional omission to limit the possible line of questioning by the CIS Examiner regarding the legitamacy of her marriage to Chris Gustafson.

Regarding the plaintiff's failure to mention her children by an individual who was not her legal husband, this was not the first time that this occurred.  As stated by the defendants in its motion for summary judgment, on November 6, 1996, the plaintiff and her legal husband, Chris Gustafson, filed a Joint

---

[1] The defendants will refer to the Administrative Record as "AR".

Petition to Remove the Conditional Basis of Alien's Permanent Resident Status, Form I-751.  Docket Entry 10, Exhibit 4; AR-0096-0097.  On the petition, the plaintiff claimed that neither Gustafson nor herself had any children.  Id.  This was contrary to the fact that the plaintiff had given birth to Waleed Chakir on December 14, 1995, the biological son of Abdelkouddous Chakir.  Id.[2]  Clearly, this omission was not truthful.  This omission resulted in the approval of the plaintiff's Joint Petition to Remove the Conditional Basis of Alien's Permanent Resident Status on November 27, 1996, without further examination.  Docket Entry #10, Exhibit 3, p. 5; AR-0096.  Undoubtedly, if the CIS Examiner was aware that the plaintiff had given birth to a child and was pregnant with a second, both of whom were the biological children of an illegal immigrant from Morocco and were conceived while the plaintiff was "married" to Chris Gustafson, the plaintiff's petition would not have been approved without further investigation.

In addition, the petition listed both the plaintiff and Gustafson as living at 1824 Shore Drive, S#117 South Pasadena, Florida.  Id.  This was contrary to Gustafson's affidavit which stated that he was living and taking classes in Phoenix.  Docket Entry #10, Exhibit 3, p. 33; AR-0081.  It was also contrary to

---

[2] At the time of filing, the plaintiff was also pregnant with her second child who was born on January 2, 1997, and whose biological father was Abdelkouddous Chakir.

the plaintiff's own later filed affidavit which stated that, since their separation in 1995, Gustafson did not return to Florida until December 1996. Id. at 5. This situation would have also raised a red flag with the CIS Examiner and would have resulted in the plaintiff's petition not being approved without further investigation.

This failure of the plaintiff to tell the truth was not an isolated incident, rather, it was consistent with a pattern of deception initiated by the plaintiff throughout her citizenship process. The plaintiff's failure to tell the truth on three separate occasions under oath is clear evidence that the plaintiff is not a person of good moral character under the law.

As set forth in the defendants' previously filed memorandum of law, to be eligible for naturalization, an applicant must be a person of good moral character. 8 U.S.C. § 1427(a)(1)(3); 8 U.S.C § 1101(f)(6). The applicant bears the burden of demonstrating that during the statutorily prescribed period (five years immediately following filing of application[3]) he or she has been and continues to be a person of good moral character. 8 C.F.R. § 310.10(a). "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was -- (6) one who has given false testimony for the purpose of

---

[3] See 8 U.S.C. § 1427(a).

5

obtaining any benefits under this chapter." 8 U.S.C. § 1101(f)(6). An applicant shall be found to lack good moral character if, during the statutory period, the applicant -

> Has given false testimony to obtain any immigration benefit from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit; <u>this prohibition applies regardless of whether the information provided in the false testimony was material</u>, in the sense that if given truthfully it would have rendered ineligible for benefits either the applicant or the person on whose behalf the applicant sought the benefit.

8 C.F.R. § 316.10(b)(2)(vi)(emphasis added).

Any testimony given under oath which is false can be used to show lack of good moral character, no matter how trivial or how consequential. <u>See</u> <u>Kungys v. United States</u>, 483 U.S. 759, 780 (1988). In <u>Kungys</u>, the petitioner was found to be lacking good moral character for providing false testimony as to his date and place of birth on both his visa and naturalization applications. <u>Id.</u> at 782. In reaching this decision, the Court stated that 8 U.S.C. § 1101(f)(6) "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies . . ." <u>Id.</u> at 779-780.

In a similar decision, <u>Opere v. United States Immigration and Naturalization Service</u>, 267 F.3d. 10 (1st Cir., 2001), the plaintiff filed for a "green card" based on his marriage to United States citizen. <u>Id.</u> at 12. The petition stated the plaintiff and his wife were residing together at 53 Pine Street.

6

Id. The plaintiff and his wife both affirmed their living arrangements under oath to the Immigration Officer. Id. The plaintiff's wife later recanted, testifying that she and the plaintiff had separated two months prior to the interview and she was living with her sister. The Court of Appeals upheld the Immigration Board's determination that plaintiff was statutorily ineligible from establishing good moral character for providing false testimony. Id. at 14.

In the case at hand, the plaintiff completed a Petition to Remove the Conditions on Residence under the pains of perjury in which she failed to mention that she had given birth to a child and was pregnant with a second, both of whom were the biological children of an illegal immigrant from Morocco and were conceived while the plaintiff was "married" to Chris Gustafson, and she also stated that her and her legal husband were living at the same address when, in fact, she was living in Florida and he was living in Arizona. In addition, the plaintiff submitted an affidavit in support of her application for naturalization in which she failed to admit that she had a fourth child with Abdelkouddous Chakir. This failure of the plaintiff to tell the truth was not an isolated incident, rather, it was consistent with a pattern of deception initiated by the plaintiff throughout her citizenship process. The plaintiff's failure to tell the truth on at least three separate occasions under oath is clear

7

evidence that the plaintiff is not a person of good moral character under the law.

Consequently, the defendants' denial of the plaintiff's application was proper.

## CONCLUSION

The plaintiff's failure to tell the truth under oath on three separate occasions is clear evidence that the plaintiff is not a person of good moral conduct.  According, the decision of the CIS should be affirmed and naturalization should be denied.

>
> Respectfully submitted,
>
> UNITED STATES OF AMERICA
> By its attorney,
>
> MICHAEL J. SULLIVAN
> United States Attorney

Dated: June 25, 2007      By:   /S/ Christopher R. Donato
                                Christopher R. Donato
                                Assistant U.S. Attorney
                                U.S. Attorney's Office
                                John Joseph Moakley Courthouse
                                1 Courthouse Way, Suite 9200
                                Boston, MA 02210
                                (617) 748-3303

## CERTIFICATE OF SERVICE

I hereby certify that the above-document was filed through the ECF system electronically to any registered participants and a paper copy was sent by mail to those indicated as non-registered participants.

Dated: June 25, 2007            /S/ Christopher R. Donato
                                Christopher R. Donato
                                Assistant U.S. Attorney