United States District Court
District of Massachusetts

```
_____
                                )
ILHAME AZZIZ,                   )
         Plaintiff,             )
                                )
      v.                        )    Civil Action No.
                                )    05-10751-NMG
MICHAEL CHERTOFF, as Secretary  )
of the Department Homeland      )
Security, EDUARDO AGUIRRE, as   )
Director of the U.S. Citizenship)
& Immigration Services, DENIS C.)
RIORDAN, as District Director of)
the U.S. Citizenship &          )
Immigration Services for Boston,)
Massachusetts,                  )
         Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

     The plaintiff, Ihame Azziz ("Azziz"), is a native of Morocco who seeks review of the denial of her application for naturalization.

**I.   Background**

     **A.   Factual Background**

_____On January 25, 1995 Azziz was granted conditional permanent resident status as the spouse of a United States citizen.  She met her husband, Chris Gustafson ("Gustafson"), on a visit to her brother in St. Petersburg, Florida in December 1993 and married him on August 4, 1994.  In early 1995, Azziz visited her family in Morocco but Gustafson did not go with her.  When Azziz

-1-

returned to the United States, Gustafson had left her.  Soon
thereafter, the plaintiff became pregnant with a child by
Abdelkouddous Chakir ("Chakir"), a Moroccan friend of her brother
who was in the United States illegally.  On December 14, 1995,
Azziz gave birth to Waleed Chakir.  After the birth of her first
child, Azziz stayed in a relationship with Chakir.

On November 6, 1996, Azziz and Gustafson filed a Joint
Petition to Remove Conditional Basis of Alien's Permanent
Resident Status, Form I-751 ("Joint Petition").  The completed
Joint Petition listed the same address in South Pasadena, Florida
for both Azziz and Gustafson.  In the space provided to list
children, they answered "none."  Three weeks later the petition
was approved.  Sometime in December, 1996, Gustafson returned to
Florida.  On January 2, 1997, Azziz gave birth to her second
child by Chakir, Reda.  Later in 1997, Gustafson left Azziz
again.  On January 30, 1998, the plaintiff gave birth to her
third child, also by Chakir.  On March 25, 1999, Azziz and
Gustafson were legally divorced.

On February 2, 2000, Azziz signed her original Application
for Naturalization, Form N-400, on which she reported that she
had three children.  On February 9, 2000, Azziz gave birth to her
fourth child, Anis Chakir.  On February 28, 2000, the United
States Citizenship and Immigration Services stamped her
application as received.

On October 10, 2002, after Azziz had moved to the Boston area, her application for naturalization was denied. The following month, Azziz requested a hearing on the denial of her application and included a supporting affidavit in which she mentioned only three of her four children ("the November, 2002 affidavit"). On December 15, 2004, the District Director for Citizenship and Immigration Services ("District Director") issued a decision denying the plaintiff's application for naturalization. On April 14, 2005, Azziz filed a timely complaint in the instant action to review the denial of her application for naturalization.

   **B.    Procedural History**

On February 13, 2006, Azziz filed an assented-to motion to stay proceedings in order to give her more time to resolve this matter outside of court. On November 22, 2006, this Court instructed the parties to report on the status of the case. The defendants then answered the complaint on November 28, 2006, and a few days later the parties reported that the matter could not be resolved outside of court and asked the Court to retain jurisdiction. On April 19, 2007, the defendants filed a motion for summary judgment which is opposed by Azziz. The defendants have filed a reply to the opposition. On October 12, 2007, Azziz filed a motion to exclude the administrative file which the government has opposed. A motion hearing on both pending motions

-3-

was held on October 26, 2007.

## II.  **Analysis**

### A.   **Motion to Exclude the Administrative File (Docket No. 16)**

At the October 26, 2007 hearing, the parties agreed to the admission of three documents from the administrative file: 1) the Joint Petition, 2) the February, 2002 Application for Naturalization and its attachments and 3) the November, 2002 affidavit.  All three documents were authored and/or signed by Azziz.  Accordingly, the Court will deny the plaintiff's motion to exclude the administrative file with respect to the subject documents but otherwise allow it.

### B.   **Defendants' Motion for Summary Judgment (Docket No. 9)**

#### 1.   **Legal Standard**

##### a.   **Summary Judgment**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists where

the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### b. Immigration Law

An applicant seeking to become a naturalized citizen may appeal the denial of her application to the district court. 8 U.S.C. § 1421(c). The district court reviews the denial de novo, makes its own findings of fact and conclusions of law and, if the petitioner requests, conducts a hearing de novo on the application. Id.

An applicant for naturalization must satisfy several requirements. The requirement at issue in this motion for

-5-

summary judgment is that the applicant be of good moral character during the statutory period, which is five years immediately preceding the date of the filing of the application for naturalization. 8 U.S.C. § 1427(a). There is a statutory, non-exclusive list of factors that, if applicable to the applicant, preclude a finding that she is of good moral character. 8 U.S.C. § 1101(f). Most relevant to this case is whether or not the applicant has provided false testimony in order to obtain immigration benefits. 8 U.S.C. § 1101(f)(6). If the testimony was false and given to obtain immigration benefits, the applicant is considered to be not of good moral character regardless of the materiality of the information. 8 C.F.R. § 316.10(b)(2)(vi).

## 2.  Analysis

The government initially argued in support of its motion for summary judgment that Azziz failed to tell the truth under oath in order to gain immigration benefits on three separate occasions during the statutory period. It alleged that Azziz failed to report having a fourth child with Chakir: 1) in her original application for naturalization signed under the pains of perjury on February 2, 2000, 2) when interviewed under oath regarding her application in January, 2001 and 3) in an affidavit submitted in support of her application for naturalization signed on November 10, 2002. Upon further review of the administrative record, the government rescinded the first allegation and, although not

-6-

explicit in its reply memorandum, stated at oral argument that it
had rescinded the second allegation as well.

In its reply memorandum, however, the government added two
arguments with respect to Azziz's moral turpitude.  The new
arguments are based upon representations made in the Joint
Petition filed by Azziz and Gustafson in November, 1996.  In that
petition, Azziz and Gustafson listed their address as being in
South Pasadena, Florida and that, with respect to children, there
were "none."  At the time of the filing of that petition, Azziz
had given birth to a child, and, in a later affidavit, indicated
that Gustafson did not live in Florida in November, 1996.

Initially, it is noteworthy that the statements made in the
November, 2002 affidavit and the November, 1996 petition are both
within the statutory period for determining good moral character.
The November, 1996 statements were made less than five years
before the filing of the application for naturalization in
February, 2000.  The November, 2002 statements were made after
the filing of the application, but applicants must maintain good
moral character from the time of filing the application until
they are naturalized.  8 U.S.C. § 1427(a)(3); 8 C.F.R. §
316.10(a)(1).

### a.   Alleged False Statements in the November 11, 2002 Affidavit

In November, 2002, Azziz submitted an affidavit in support
of her request for a hearing to review the denial of her

application for naturalization.  Responding to allegations in the denial that Azziz had entered into a false marriage with Gustafson, Azziz attested:

> During [the time when my marriage with Gustafson was breaking up], my brother Essam's Moroccan friend, Abdelkouddous Chakir, befriended me, and because I was emotionally weak, I engage in sexual relations with him.  I became pregnant with my first child, Waleed Chakir, who was born on December 14, 1995.  After Waleed was born, I stayed in a relationship with Abdelkouddous and had two more children by him, Reda Chakir, born January 2, 1997, and Soraya Chakir, born on January 30, 1998.  All of my children are United State Citizens.

The government argues that Azziz's failure to mention her fourth child in this affidavit was a deliberate omission intended to limit the possible line of questioning regarding the legitimacy of her marriage.  Azziz responds that she did not mention her fourth child because that child was conceived and born following her divorce from Gustafson, rendering that birth irrelevant to any issue about the legitimacy of her marriage to Gustafson.

Because the pending motion is for summary judgment, the Court must make all reasonable inferences in favor of the nonmoving party.  It is reasonable to assume that Azziz did not believe that the birth of her fourth child was relevant to the issue of the legitimacy of her marriage.  To determine whether the omission amounted to the giving of false testimony involves a genuine issue of material fact that must be determined at trial.

-8-

b.    **Alleged False Address in the November, 1996 Joint Petition**

The government, in its reply brief and at oral argument, contends that false statements in the Joint Petition demonstrate that Azziz does not have good moral character.  There were two alleged false statements in that petition which was signed by Azziz under the penalty of perjury.  The government alleges that Azziz misrepresented where her purported husband, Gustafson, lived and falsely stated that she had no children.

Part 4 of the Joint Petition is entitled "Information about the spouse or partner through whom you gained your conditional residence."  In that part, the applicants are asked for the address of the spouse to which Azziz and Gustafson responded "1824 Shore Dr. #117, South Pasadena, Florida."  By Azziz's own admission, Gustafson was not living in Florida in November, 1996.  In the November, 2002 affidavit, she testified that Gustafson was separated from her and left Florida in early 1995 and that he did not return to Florida until December, 1996.  She also stated in that affidavit that she had to locate him through his friends and relatives.  It is unreasonable to infer from such uncontroverted facts that a person who had not resided in or visited a residence or maintained regular contact with the occupant of that residence would consider it to be his legal address.  When combined with the answer provided in the Joint Petition with respect to the number of applicant's children, it is clear that the information

about Gustafson's address was a false statement made in order to gain immigration benefits.

### c. Alleged False Statements about Children in the November, 1996 Joint Petition

Part 5 of the Joint Petition is entitled "Information about your children," and the form states, "List _all_ your children." The applicants answered "none."  It is undisputed that when Azziz signed the Joint Petition, she had one child by Chakir and was pregnant with a second.  It is not reasonable to infer that Azziz misunderstood the instructions.  The form not only instructs the petitioner to list all of her children, it underlines and italicizes "all", making it clear that no child is to be omitted.

Moreover, although the form is a Joint Petition, it requests information primarily about the person who seeks to have the conditions of residence removed ("the applicant"), in this case, Azziz.  Throughout the petition, the applicant is referred to as "you."  For example, Part 1 asks for "Information about you," referring to the applicant.  Part 3 asks for "Additional information about you" and contains questions relating to the applicant.  Part 5, then, which seeks "Information about your children" can only be reasonably interpreted as requesting information about _all_ of the applicant's children.  Azziz failed to list her child, thereby giving false testimony in order to obtain immigration benefits.  That false testimony demonstrates that, pursuant to the statutory prerequisites, Azziz is not a

-10-

person of good moral character.  8 U.S.C. § 1101(f)(6).  Her
application for naturalization was, therefore, properly denied
and the government's motion for summary judgment will be allowed.

### ORDER

In accordance with the foregoing, the plaintiff's motion to
exclude the administrative file (Docket No. 16) is, with respect
to 1) the plaintiff's November, 1996, Joint Petition to Remove
Conditional Basis of Alien's Permanent Resident Status, Form I-
751, 2) the February, 2000 Application for Naturalization, Form
N-400 and its attachments and 3) the November, 2002 affidavit in
support of her request for a hearing on the denial of her
application, **DENIED**, but is otherwise **ALLOWED**.  The defendant's
motion for summary judgment (Docket No. 9) is **ALLOWED**.


**So ordered.**

                                    /s/Nathaniel M. Gorton
                                   Nathaniel M. Gorton
                                   United States District Judge
Dated November 7, 2007